UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ROCHE AND
SUE RADULOVICH,

             Plaintiffs,

v.                                         Case No. 14-CV-11424
                                         Hon. Denise Page Hood

CITIMORTGAGE, INC.,
TROTT & TROTT, P.C.,
FEDERAL HOME LOAN MORTGAGE CORP.,
JOHN DOE AND MARY ROE,

             Defendants.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS OR IN THE ALTERNATIVE FOR
SUMMARY JUDGMENT (DOC. # 39); DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (DOC. # 40); DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (DOC. # 44); DENYING
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (DOC. # 43)
AND
DISMISSING ACTION**

## I.    INTRODUCTION

      This matter comes before the Court on various motions filed by the parties.

Defendant Trott & Trott filed motion for judgment on the pleadings, or in the alternative

for summary judgment on responded on August 6, 2015 (Doc. No. 39).  Defendants

CitiMortgage, Inc. ("CMI") and Federal Home Loan Mortgage Corp. ("Freddie Mac")

filed a motion for summary judgment on August 6, 2015  (Doc. No. 40).  Plaintiffs John

1

Roche and Sue Radulovich (collectively, "Plaintiffs") filed their own motion for summary

judgment on August 6, 2015 (Doc. No. 44).  Plaintiffs also filed a motion for default

judgment on August 6, 2015 (Doc. No. 43).  Response briefs have been filed and a

hearing held on the motions.

## II.    BACKGROUND

On or about February 24, 1999, Plaintiff Sue Radulovich purchased a property

with a legal description of:

> Lot 17, Grosse Pointe Shores Realty Co. Subdivision, according to
> the plat thereof as recorded in liber 34, page(s) 49 of Plats, Wayne County
> Records.  Parcel ID Nos. 40-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-001 (Grosse Pointe Woods) and
> 74-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-001 (Gross Pointe Shores), commonly known as 505
> Hampton Road, Grosse Pointe Woods, MI 48236.

(Comp., ¶ 5)  Ms. Radulovich asserts she executed a mortgage with Standard Federal

Bank for the property described in the Mortgage as: "Lot 17, Grosse Pointe Shores Realty

Co. Subdivision, according to the plat thereof as recorded in liber 34, pages 49 of Plats,

Wayne County Records."  (Mortgage, Doc. No. 40-2, Pg ID 478) The Mortgage identifies

 "Sidwell Number:  40006010017001."  (*Id.*)  Ms. Radulovich also executed a Note as

security on the Mortgage.  On or about April 2, 2001, Standard Federal Bank became

defunct.  Plaintiffs allege that upon information and belief, they did not owe Standard

Federal Bank any funds.  On or about July 1, 2002, Ms. Radulovich quit claimed the

property to herself and her husband, John Roche, as tenants by the entirety.  On June 18,

2009, Standard Federal Bank assigned the mortgage to Defendant CMI and recorded its

interest on June 29, 2009.

In February 2009, Plaintiffs contacted Defendant CMI to discuss a loan modification due to Plaintiffs' financial hardships.  Defendant CMI advised Plaintiffs that they would not be eligible for a loan modification program unless they missed two payments.  Plaintiffs missed payments in May and June 2009 as a result.  Plaintiffs did not sign the loan modification program until July 29, 2009.  Plaintiffs made a timely payment under the modification program.  They were advised by Defendant CMI that they were not in foreclosure but in a loan modification trial period.  Plaintiffs received a Sheriff's Deed in the mail and Defendant CMI assured them that they were not in foreclosure.  Notice was given and the Property was sold at a Sheriff's sale to Federal Home Loan Mortgage Corporation ("Freddie Mac") on July 15, 2009.

Plaintiffs allege that Defendant Trott & Trott, representatives for Defendants and processors,  drafted the Sheriff's Deed and other documents with the wrong name of Sue Allen and property address which identified the property as being in Grosse Pointe.  Defendant CMI informed Plaintiffs that it would not accept any further modification payments because Freddie Mac owned the Property.  Defendant CMI also stated that it was working to reverse the foreclosure. Defendant Trott & Trott filed an affidavit expunging the Sheriff's sale with the Wayne County Register of Deeds in April 2010.

In December 2010, Defendant CMI informed Plaintiffs that Defendant Trott & Trott had reversed the foreclosure and that Plaintiffs could resume making loan modification payments.  However, Defendant CMI would not accept the payment when Plaintiffs sent it because Freddie Mac owned the Property.  Defendant CMI informed

Plaintiffs that their failure to make modification payments caused the Property to go back into foreclosure.  Plaintiffs conducted a records search and discovered that there was nothing to indicate that the foreclosure had been expunged and demanded documents from Defendant CMI.  Defendant CMI advised Plaintiffs that they would be placed back on the loan modification plan.  Plaintiffs provided the requested income statements but Defendant CMI did not provide documents showing that the first foreclosure had been reversed.  Defendant Trott & Trott sent a letter in November 2010 stating that the foreclosure was reversed but the letter had the wrong name and address.  The letter contained the name Sue Allen and identified the city as Grosse Pointe.  Plaintiffs informed Defendant Trott & Trott of the mistake.  The Property was sold again at a Sheriff's sale to Freddie Mac on June 22, 2011.  The redemption period expired on December 22, 2011.

Plaintiffs filed the present action *pro se* in Wayne County Circuit Court on December 22, 2011. In their Complaint, Plaintiffs allege: (1) negligence; (2) fraud and a request the Court to set aside the Sheriff sale as void or cancel the assignment; (3) wrongful foreclosure; (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; (6) fraudulent business practices; (7) quiet title; (8) slander of title; and (9) intentional infliction of emotional distress.

Defendants removed the action to this Court on January 20, 2012 in Case No. 12-10266.  At that time, Defendant Freddie Mac filed an action in Grosse Pointe Municipal Court requesting that the court evict Plaintiffs.  The Grosse Pointe Municipal Court found

4

that there were "numerous ambiguities" in the assignment of the mortgage and that the mortgage did not "encompass [Plaintiffs'] entire property." The municipal court concluded that it could not "summarily enlarge [the] mortgage." Defendant Freddie Mac filed a motion for reconsideration with the Grosse Pointe Municipal Court. On September 28, 2012, this Court entered an Order Dismissing the Action without Prejudice in Case No. 12-10266. This Court determined that the *Rooker-Feldman* doctrine, *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), prohibited this Court from "making a decision that would have the effect of reversing the municipal court's decision." (Case No. 12-10266, Doc. No. 14)

The Grosse Pointe Municipal Court issued an Order denying Freddie Mac's request for possession judgment, finding that the mortgage and other documents are ambiguous as to whether the mortgage encumbered the entire Lot 17, leaving the issue for the Circuit Court to decide the claim of Quiet Title. (Doc. No. 44, Pg ID 614-20) On April 8, 2014, following reopening of the case in Wayne County Circuit Court, Defendant Freddie Mac removed the case to this Court for a second time. (Doc. No. 1)

## III.    SUMMARY JUDGMENT STANDARD OF REVIEW

A Court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the

5

governing substantive law. *Id*. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. See, *Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh

the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Anderson,* 477 U.S. at 249.

## IV.   DISCUSSION

### A.      Plaintiffs' Negligence Claim

Plaintiffs assert Defendants were negligent because as the loan servicer Defendants

owed Plaintiffs a duty of reasonable care to maintain proper records of payments.

According to Michigan law, a tort action must be based on a breach of duty that is

distinct from a breach of contract, unless the aggrieved party can establish a cognizable

legal duty which is independent of the contractual duties. *See,  International Harvester*

*Credit Corp. v. Wilkie*, 695 F.2d 231, 234 (6th Cir.1982) (although actionable negligence

may arise out of contractual relationship, common-law basis of action independent of any

contractual undertaking must be established); *Rindaldo's Const. Corp. v. Michigan Bell*

*Tel. Co.*, 454 Mich. 65, 78–79, 559 N.W.2d 647 (Mich.1997) (when the duties owed to a

plaintiff by defendant arise solely out of parties' contractual relationship and not from any

independent legal obligation, there is no cause of action for tort claim). Plaintiffs'

negligence claim, arises out of their mortgage contract with CMI. They fail to allege

violations of a legal duty which is separate and distinct from the contract.  Accordingly,

their negligence claim must fail against CMI.

Regarding Trott & Trott, it is unclear if this count applies to Trott & Trott since it

was not the entity that actually held or serviced the mortgage.  If Plaintiffs intend to assert

a negligence against Trott & Trott it would fail. Trott & Trott is CMI's counsel.  Trott &

7

Trott did not share an attorney-client relationship with Plaintiffs. The Michigan Court of Appeals has stated that public policy dictates against creating a duty to an attorney's legal opponent. "[C]reation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest which would seriously hamper an attorney's effectiveness as counsel for his client. Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 402–03 (2006). Since Plaintiffs and Trott & Trott did not have an attorney-client relationship, Trott & Trott owed no duty to Plaintiffs. Plaintiffs cannot sustain a negligence action without establishing a duty.  The negligence claim fails against Trott & Trott.

### B.    Plaintiffs' Fraud Claim

Plaintiffs claim that Defendants engaged in fraud by failing to properly credit payments and foreclosing on the property.  They also allege CMI falsely claimed it could modify Plaintiffs mortgage.

To sustain an action for fraud in Michigan a plaintiff must show:

(1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555 (2012). Federal Rule of Civil Procedure 9(b) requires a claimant to "state with particularity the circumstances constituting fraud." Fed.

8

R. Civ. P. 9(b). A plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *DBI Investments, LLC v. Blavin*, No. 14-1398, 2015 WL 1379680, at *10 (6th Cir. Mar. 26, 2015). In addition, the claimant must identify the identity of the person who made the alleged misrepresentations. *Hoover v. Langston Equip. Associates, Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

Plaintiffs do not present with the requisite particularity the individuals who allegedly made the fraudulent statements, when these statements were exactly made, or the exact content of the alleged statements. Therefore, the fraud claim fails against all Defendants.

### C.    Plaintiffs' Attempt to Void or Cancel the Assignment

Plaintiffs challenge the assignment from Standard Federal to CMI.  First and foremost, it should be noted that the filing of their lawsuit on the day the redemption period ended did not toll the redemption period or stop the foreclosure proceedings. Since Plaintiffs failed to redeem the property within the statutory period, their abilities to challenge the foreclosure is severely curtailed.  *See*, *Snell v. Wells Fargo Bank*, No. 11-CV-12018, 2012 WL 1048576, at *3 (E.D. Mich. Mar. 28, 2012).

Plaintiffs challenge the assignment by claiming it is fraudulent and robo-signed. "A litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia Properties Holdings*, *LLC v. 12840–12976 Farmington Road*

9

*Holdings, LLC*, 399 F. App'x. 97, 102 (6th Cir. 2010). However, "[a]n obligor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." *Id*. (internal quotation marks omitted). These defenses include the "nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment," all of these which give the obligor standing because there was a possibility of "having to pay the same debt twice." *Id*.

Even when there are questionable assignments, irregularities in the chain of title, and even some gaps in the chain of title, the Sixth Circuit has stated that "all that matters for purposes of [plaintiff's] challenge to the foreclosure sale is whether there is a 'record chain of title,' as required by the foreclosure-by-advertisement statute. Mich. Comp. Laws § 600.3204(3) . . . 'Even if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed.'" *Bambas v. CitiMortgage, Inc.*, 577 F. App'x 461, 466 (6th Cir. 2014) (citing *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 F. App'x. 97, 102 (6th Cir. 2010)).

Here, in light of the fact that the redemption period has expired, even if the assignment is considered flawed or irregular, there is a record chain of title and under the law that is all that is required. Even if the assignment was "robo-signed," Plaintiffs present "no theory supported by Michigan law as to why the careless and cursory signing of an assignment would render it void." *Bambas*, 577 F. App'x at 466. Therefore, Plaintiffs lack standing to challenge the assignment.

10

In addition, Plaintiffs cannot argue that they are in danger of paying the same debt twice. It is unclear whether the assignment transferred the underlying note along with the mortgage, but even if the note was separated from the mortgage, the holder of the mortgage, CMI, could still foreclose. *Bambas*, 577 F. App'x at 466; *Residential Funding Co. v. Saurman*, 490 Mich. 909, 910 (2011). Plaintiffs challenge and claim that the assignment is invalid fails.

Regarding Plaintiffs' wrongful foreclosure claim and claim to set aside the Sheriff's sale, those claims hinge on Plaintiffs' challenge to the assignment. Since their assignment challenge fails, the wrongful foreclosure claim and claim to set aside the Sheriff's sale fail. This claim is dismissed against all Defendants.

### D.       Breach of Contract

Plaintiffs do not respond to Defendants' arguments regarding the breach of contract claim in their response to Defendants' summary judgment motion. Therefore, it appears Plaintiffs have waived this claim. *See Brown v. Gojcaj Foods, Inc.*, No. 09–14537, 2011 WL 1980533, at *3 (E.D.Mich. May 20, 2011) ("If a party fails to respond to an argument raised in a motion the court can assume that opposition to the motion is waived and the motion may be granted.") (citing *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x. 328, 331 (6th Cir.2008)). Nevertheless, because Plaintiffs are *pro se*, the Court will briefly address the claim.

In their Complaint, Plaintiffs claim that while undergoing the loan modification process, they were induced into missing two payments so they could qualify for the Trial

11

Period Plan ("TPP") because a CMI representative allegedly told them to do so. Plaintiffs allege that when they applied for the TPP, the "modification package contained a provision specifically stating that Defendants would not default or foreclose on Plaintiffs during the trial period, if they timely made their modified payments." (Doc. No. 1-2 at 6).

First, CMI contends that Plaintiffs first breached the original loan agreement by failing to make payments. "[O]ne who first breaches a contract cannot maintain an action against the other contracting party for [their] subsequent breach or failure to perform." *Michaels v. Amway Corp.*, 206 Mich. App. 644, 650 (Mich. Ct. App.1994).

Second, CMI argues that the TPP did not strip CMI of the ability to foreclose. CMI states that it did not induce Plaintiffs into missing two payments under the loan agreement.  Even if this allegation could be proven, CMI contends that the claim is barred by the statute of frauds.

And third, CMI argues that a TPP is not a contract because the Home Affordable Modification Program ("HAMP") does not create a private cause of action under federal law.  *See Wigod v. Wells Fargo Bank, NA*, 673 F3d 547, 559 n 4 (7th Cir. 2012) ("Courts have uniformly rejected these claims because HAMP does not create a private *federal* right of action for borrowers against servicers.").

Plaintiffs cannot sustain their breach of contract claim because the TPP did not go into effect or strip CMI of the ability to foreclose. The Michigan Court of Appeals explained that individuals may sustain a private action alleging breach of contract under

12

HAMP. The court analyzed a similar claim alleging breach of contract of a loan

modification TPP. The court stated:

> The right to participate in the HAMP and to obtain a loan modification
> agreement [is] dependent on [plaintiffs] compliance with the plans and the
> TPP. At the very most, the plans created a contract with a condition
> precedent that had to be satisfied before a duty to enter into an actual loan
> modification agreement arose on the part of [defendants] and . . . if the
> condition is not satisfied, there is no cause of action for a failure to perform
> the contract.

*U.S. Bank Nat. Ass'n v. Carswell*, No. 320416, 2015 WL 2091747, at *8 (Mich. Ct. App.

May 5, 2015), appeal denied, 498 Mich. 907 (2015). Therefore, a TPP may be treated as

condition precedent to a contract.

In this case, the TPP did not actually take effect because the condition precedent

was not fulfilled. The TPP states:

> I understand that after I sign and return two copies of the Plan to the
> Lender, the Lender will send me a signed copy of the Plan if I qualify for
> the Offer or will send me written notice that I do not qualify for the Offer.
> This Plan will not take effect unless and until both I and the Lender sign it
> and Lender provides me with a copy of this Plan with the Lender's
> signature.

 (Doc. No. 40-5 at 1).  In order for the Plan to begin, CMI had to send Plaintiffs a copy of

the CMI containing its signature to Plaintiffs.  According to CMI, Plaintiffs did not

receive a copy of the Plan with the Lender's signature.  And, Plaintiffs have not produced

a copy of the TPP with CMI's signature to rebut CMI's claim that the plan never went to

into effect. There is no evidence that the Plan went into effect.  Since the Plan did not go

into effect, CMI maintained the ability to foreclose because the plan states:

13

> The Lender will suspend any scheduled foreclosure sale, provided I
> continue to meet the obligations under this Plan, but any pending
> foreclosure action will not be dismissed and may be immediately resumed
> from the point at which it was suspended if this Plan terminates, and no new
> notice of default, notice of intent to accelerate, notice of acceleration, or
> similar notice will be necessary to continue the foreclosure action, all rights
> to such notices being hereby waived to the extent permitted by applicable
> law.

(Doc. No. 40-5 at 3).  The Plan was not in effect and so CMI could continue with the

foreclosure process. Plaintiffs cannot sustain the breach of contract claim against CMI.

Plaintiffs do not allege they had a contract with Trott & Trott. Accordingly, the breach of

contract claim is dismissed against Trott & Trott.

### E.      Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs assert a claim for breach of implied covenant of good faith and fair

dealing. Defendant CMI challenged this claim in its motion for summary judgment stating

that the mortgage agreement did not allow for any party's performance to be

discretionary.  Plaintiffs did not address this argument or this claim in their response or

their motion for summary judgment.

Breach of contract actions based upon the breach of an implied covenant of good

faith and fair dealing are limited to contracts where a contractual term leaves the manner

of performance to one party's discretion. "An implied covenant of good faith and fair

dealing in the performance of contracts is recognized by Michigan law only where one

party to the contract makes its performance a matter of its own discretion." *Stephenson v.*

*Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003).  The covenant of good faith and fair

dealing does not apply when interpreting a contract if it may "override express contract terms." *Cook v. Little Caesar Enterprises, Inc.*, 210 F.3d 653, 657 (6th Cir. 2000). Consequently, when the parties have "unmistakably expressed their respective rights," the covenant does not adhere. *Stephenson*, 328 F.3d at 827.

Plaintiffs do not allege and there is no indication that the mortgage agreement allowed for any party to defer any decisions regarding the performance of the contract, omitted any pertinent terms, or contained any ambiguous terms. There is no indication that the mortgage agreement failed to unmistakably express the parties' respective rights. Plaintiffs have not brought forth any information that would allow the Court to determine that the mortgage agreement allowed any party to defer any decisions regarding the performance of the contract. As a result, Plaintiffs' claim for breach of implied covenant of good faith fails.

The Complaint is devoid of specific allegations as to the breach of implied covenant of good faith claim against Trott & Trott. Rather, the claim seems directed at CMI. In the event Plaintiffs intended to include Trott & Trott in this claim, it must fail since it is devoid of factual allegations to put the Court or Trott & Trott on notice as to its conduct which constitutes a breach of the implied covenant of good faith and fair dealing.

### F.    Fraudulent Business Practices

Plaintiffs allege that "Michigan law prohibits acts of unfair competition, which means and includes any 'fraudulent business practice...' and conduct that is 'likely to deceive' and is 'fraudulent.'" (Doc No. 1-2). Plaintiffs allege that Defendants violated

15

Michigan law by, among other things, "improperly characterizing costumers' accounts as being in default or delinquent status to generate unwarranted fees," "misapplying or failing to apply customer payments," and "instituting improper or premature foreclosure proceedings to generate unwarranted fees."  (Doc No. 1-2, pg. 19).

Plaintiffs fail to identify the precise law they wish to assert these claims under or allege any violation of any specific statute or common law.  The Court recognizes that part of the Michigan Consumer Protection Act, M.C.L. § 445.903, addresses "[u]nfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce." Accordingly, the Court construes Count 8 of Plaintiffs' Complaint as a claim under the MCPA.  However, even after construing Plaintiffs' claim as one under the MCPA, the claim fails as a matter of law.

The MCPA protects consumers against unfair business practices.  M.C.L. § 445.901.  It does not apply to "[transactions] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  M.C.L. § 445.904(a).  National banking institutions and their subsidiaries are authorized under the Department of Treasury's Office of the Comptroller of Currency to engage in residential mortgage and loan transactions. *Wallace v. Chase Home Fin. LLC*, No. 299984, 2011 WL 4503314, at *5 (Mich. Ct. App. Sept. 29, 2011).  Therefore, the MCPA does not apply to residential mortgage loan transactions made by these institutions. *Id*.

16

CMI is a subsidiary of a national banking institution, accordingly, it is exempt from the MCPA.  Plaintiffs' MCPA claim fails.  *See also*, *Richardson v. Flagstar Bank, FSB*, No. 264547, 2006 WL 664336, at *3 (Mich. Ct. App. Mar. 16, 2006)(The Michigan Consumer Protection Act under M.C.L. § 445.904(1) does not apply to the lending activity of banks.).  Plaintiffs do not make any factual allegations in this count against Trott & Trott.  The MCPA claim is dismissed against all Defendants.

### G.    Quiet Title

Plaintiffs seek to quiet title their interest in the contested property of 505 Hampton. A quiet title action is a judicial procedure to determine competing rights among parties claiming interests in certain real property.  *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 803 (E.D. Mich. 2012). Under Michigan law, once a property goes into foreclosure, a former owner's right, title, and interest in property are extinguished upon the expiration of the redemption period. *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 803 (E.D. Mich. 2012). In order to set aside a foreclosure sale, a plaintiff must establish some "fraud, accident, or mistake." *Freeman v. Wozniak*, 241 Mich.App. 633, 637, 617 N.W.2d 46, 49 (2000). The allegation of  fraud, accident, or mistake must relate to the foreclosure proceeding itself. *Stein v. U.S. Bancorp*, No. 10–14026, 2011 WL 740537, at *6 (E.D. Mich. Feb. 24, 2011).  "The standard to do so is high." *Id.* (citing *Vanderhoof,* 554 F. App'x at 357).  In addition to a showing of irregularity, in order to set aside the foreclosure sale, "the mortgagor must [also] show prejudice, i.e., that they would have been in a better position to preserve their interest in the property absent defendant's

17

noncompliance with the statute." *Gjokaj*, 602 F. App'x at 278 (quoting *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 825 N.W.2d 329, 337 (2012)) (internal quotations omitted).

Plaintiffs failed to redeem the property before the redemption period expired on December 22, 2011. Plaintiffs must allege some type of irregularity in the foreclosure process itself that resulted in prejudice. Plaintiffs failed to do so. There is no evidence that there was an irregularity with the foreclosure process itself; rather, Plaintiffs allege that the assignment was invalid - an argument the Court has determined fails. Plaintiffs also fail to explain how they suffered prejudice. They do not explain how they would be in a better position had the foreclosure process been different.

In their motion for summary judgment on the quiet title claim, Plaintiffs argue that because the Mortgage signed by Ms. Radulovich identifies parcel number or sidwill number  40-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-001, only this parcel is encumbered by the Mortgage and the other parcel number 74-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-001 is not. This claim in Plaintiffs' Complaint fails.

Plaintiffs are conflating the property legal description required to convey certain property and the tax identification number. A sidwell number, as identified in the Mortgage, is also known as a tax identification number or parcel identification number, which is required for a tax parcel's legal description. *Jaikens v. Rose Twp.*, 2006 WL 1185464, *9 n. 7 (Mich. Ct. App. May 4, 2006).

18

Michigan law authorizes assessing officers to establish a real estate index number system for purposes of assessing and collecting taxes, in addition to or in lieu of listing by legal description. M.C.L. § 211.25(a). The Parcel Identification Number system has been adopted throughout the State of Michigan. The parcel number consists of five components. The first represents the county, the second the survey township, the third the section within the township, the fourth the block where the property is located, and the fifth the parcel number within the block. *See Rose v. Fed. Home Loan Mortg. Corp.,* 2010 WL 3779002, *3 n. 2 (W.D. Mich. Sept. 21, 2010). Michigan's Land Division Act ("LDA") provides that "[w]hen a subdivision plat has been recorded, the lots in that plat shall be described by the caption of the plat and lot number for all purposes, including those of assessment, taxation, sale and conveyance." M.C.L. § 560.255.

Both the Mortgage executed by Ms. Radulovich and the Assignment of the property to CMI describes the encumbered property as:

> Lot 17, Grosse Pointe Shores Realty Co. Subdivision, according to the plat thereof as recorded in liber 34, Pages 49 of Plats, Wayne County Records.

(Doc. No. 40-2, Pg ID 478) The description sets forth the plat and the lot as required by the LDA. The sidwell or the tax identification number in both documents only notes the one number. However, this sidwell or tax identification number, relevant to the taxing authority, is not relevant to the identification of the conveyed, assigned or encumbered

19

property.  Both the mortgage and assignment sets forth the legal description of the

property for purposes of encumbering and assignment of the property.  Plaintiffs' request

for summary judgment on the Quiet Title claim is denied and granted in favor of

Defendants.

### H.      Slander of Title

Plaintiffs claim slander of title.  Specifically, they allege Defendants' conduct

disparaged the chain of title through the false assignment. Plaintiffs do not identify

whether they are pleading common law slander of title or statutory slander of title.

To establish common law slander of title, a plaintiff must show falsity, malice, and

special damages, i.e., that the defendant maliciously published false statements that

disparaged a plaintiff's right in property, causing special damages. *B & B Inv. Grp. v.

Gitler*, 229 Mich. App. 1, 8 (1998). The same three elements are required in slander of

title actions brought under M.C.L. § 565.108.  *Derbabian v. Bank of Am., N.A.*, 587 F.

App'x 949, 958 (6th Cir. 2014).  Plaintiffs' slander of title claim hinges on the alleged

invalid assignment.  As noted, that allegation fails since the Court found the assignment

was valid. Therefore, Plaintiffs' slander of title claim fails as well.

### I.      Intentional Infliction of Emotional Distress

Plaintiffs allege that Defendants' conduct of alleged fraud and other acts constitute

intentional infliction of emotional distress.  To sustain a claim for infliction of emotional

distress a plaintiff  must allege: (1) extreme and outrageous conduct, (2) intent or

recklessness, (3) causation, and (4) severe emotional distress. *Chungag v. Wells Fargo*

20

*Bank, N.A.*, 489 F. App'x 820, 824-25 (6th Cir. 2012).  A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. Under Michigan law, damages for emotional distress are not recoverable in breach of contract or foreclosure actions. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 415 (1980); *Robbins v. Mortgage Elec. Registration Sys., Inc.*, No. 1:09-CV-295, 2009 WL 3757443, at *8 (W.D. Mich. Nov. 9, 2009). Since Plaintiffs' infliction of emotional distress claim is based on their contractual relationship with CMI, their intentional infliction of emotional distress claim fails as a matter of law.  The count also fails against Trott & Trott since Plaintiffs failed to identify Trott & Trott's alleged outrageous behavior.

## V.    PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Plaintiffs seek a default judgment against Defendants CMI and Freddie Mac for failure to timely respond to discovery requests.  Based on Defendants CMI and Freddie Mac's showing that they responded to the discovery requests within the time set forth in the Rules, the Court denies Plaintiffs' motion.  Even if the responses were untimely, the Court denies Plaintiffs motion since Defendants CMI and Freddie Mac did respond to the discovery requests.

## VI.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Trott & Trott's Motion for Judgment on the Pleadings or in the Alternative Summary Judgment (Doc. # 39) is **GRANTED**. Defendant Trott & Trott is DISMISSED.

IT IS FURTHER ORDERED that Defendants CitiMortgage and Federal Home Loan Mortgage's Motion for Summary Judgment (Doc. #40) is **GRANTED.** Defendants CitiMortgage and Federal Home Loan Mortgage are DISMISSED.

IT IS FURTHER ORDERED that  Plaintiffs' Motion for Summary Judgment (Doc. # 44) is **DENIED.**

IT IS FURTHER ORDERED that Plaintiffs' Motion for Default Judgment (Doc. # 43) is **DENIED**.

IT IS FURTHER ORDERED that Defendants John Doe and Mary Roe are DISMISSED without prejudice, Plaintiff having failed to identify these Defendants at this time.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.


S/Denise Page Hood
Denise Page Hood
Chief Judge

Dated:  September 30, 2016


**CERTIFICATE OF SERVICE/MAILING**

I certify that a copy of this document was served  on September 30, 2016, by electronic or ordinary mail to all parties in interest.

S/La Shawn Saulsberry
Deputy Clerk
(313) 234-5090